IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BMO HARRIS BANK N.A., | ) | Case No. 5:22-cv-613 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE: |
| v. | ) | |
| | ) | |
| CRAIG STACY, and | ) | COMPLAINT |
| JERRY STONEBURNER, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, BMO Harris Bank N.A., by and through its attorneys, complains of Defendants, Craig Stacy and Jerry Stoneburner, as follows:

## THE PARTIES

1. Plaintiff, BMO Harris Bank N.A. ("Plaintiff"), is a national banking association with its main office located in Chicago, Illinois, as set forth in its articles of association. For jurisdictional purposes, Plaintiff is a citizen of the State of Illinois.

2. Defendant Craig Stacy ("Stacy") is an individual, citizen of the State of Ohio residing at 1080 Top of the Hill Drive, Akron, Ohio.

3. Defendant Jerry Stoneburner ("Stoneburner," and together with Stacy, the "Defendants") is an individual, citizen of the State of Ohio residing at 41738 Esterly Drive, Columbia, Ohio.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a).

5. There is complete diversity of citizenship between the parties.

6. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

7. The Court may exercise personal jurisdiction over the Defendants.

8. Venue is also proper in this Court under 28 U.S.C. § 1391.

9. One or more of the Defendants reside within the territorial boundaries of the Northern District of Ohio and all Defendants reside within the State of Ohio.

## FACTUAL BACKGROUND
### The Leases & Guaranties

### *The Noble Lease*

10. On or about April 19, 2013, non-party General Electric Capital Corporation ("GECC") and non-party Noble's Inc. ("Noble") entered into a Master Vehicle Lease Agreement (the "Noble MLA"), and a Split-Trac Addendum to Master Vehicle Lease Agreement (the "Noble Addendum"), pursuant to which the parties agreed to terms by which Noble may lease from GECC, or one of its affiliates, certain commercial vehicles for use in Noble's business, as set forth in any and all "Schedule A" entered thereunder.  A true and correct copy of the Noble MLA and the Noble Addendum are attached together hereto as "**Exhibit A-1**."

11. Noble and GECC's affiliate, the GE TF Trust, entered into at least one Schedule A under the Noble MLA and the Noble Addendum.

12. Also, on or about October 17, 2013, Noble and the GE TF Trust entered into Schedule A to the Noble MLA and the Noble Addendum (the "October 17th Schedule A"), pursuant to which GE TF Trust leased to Noble the equipment described therein, and Noble agreed to pay rent and other amounts to GE TF Trust pursuant to the terms thereof.  A true and correct copy of the October 17th Schedule A is attached hereto as "**Exhibit A-2**."

13. Hereinafter, the Noble MLA, Noble Addendum, and October 17th Schedule A, are referred to collectively as the "Noble Lease."

### *The BMCO Lease*

14. On or about November 26, 2014, GECC and non-party Better Management Corporation of Ohio, Inc. ("BMCO") entered into a Master Vehicle Lease Agreement (the "BMCO MLA"), and a Split-Trac Addendum to Master Vehicle Lease Agreement (the "BMCO Addendum") pursuant to which the parties agreed to terms by which BMCO may lease from GECC, or one of its affiliates, certain commercial vehicles for use in BMCO's business, as set forth in any and all "Schedule A" entered thereunder. A true and correct copy of the BMCO MLA and the BMCO Addendum are attached together as "**Exhibit B-1**."

15. BMCO and GECC's affiliate, the GE TF Trust, entered into at least one Schedule A under the BMCO MLA and the BMCO Addendum.

16. Specifically, on or about November 26, 2014, BMCO and the GE TF Trust entered into a Schedule A to the BMCO Lease (the "November 26th Schedule A"), pursuant to which GE TF Trust leased to BMCO the equipment described therein, and BMCO agreed to pay rent and other amounts to GE TF Trust pursuant to the terms thereof. A true and correct copy of the November 26th Schedule A is attached hereto as "**Exhibit B-2**."

17. Hereinafter, the BMCO MLA, BMCO Addendum, and November 26th Schedule A are referred to collectively as the "BMCO Lease."

### *The Nuway Lease*

18. On or about January 30, 2015, GECC and non-party Nuway Logistics Group, LLC ("Nuway") entered into a Master Vehicle Lease Agreement (the "Nuway MLA") and a Split-Trac Addendum to Master Vehicle Lease Agreement (the "Nuway Addendum"), pursuant to which the parties agreed to terms by which Nuway may lease from GECC, or one of its affiliates, certain commercial vehicles for use in Nuway's business, as set forth in any and all

"Schedule A" entered thereunder. A true and correct copy of the Nuway MLA and the Nuway Addendum are attached together hereto as "**Exhibit C-1**."

19. Nuway and GECC's affiliate, the GE TF Trust, entered into at least one Schedule A under the Nuway MLA and the Nuway Addendum.

20. Specifically, on or about January 30, 2015, Nuway and the GE TF Trust entered into a Schedule A to the Nuway Lease (the "January 30th Schedule A"), pursuant to which GE TF Trust leased to Nuway the equipment described therein, and Nuway agreed to pay rent and other amounts to GE TF Trust pursuant to the terms thereof. A true and correct copy of the January 30th Schedule A is attached hereto as "**Exhibit C-2**."

21. Hereinafter, the Nuway MLA, Nuway Addendum, and January 30th Schedule A are referred to collectively as the "Nuway Lease."

*The Nuway-BMCO Sublease*

22. On or about January 30, 2015, Nuway and BMCO entered into a Sublease Agreement under the Nuway Lease (the "Nuway-BMCO Sublease") pursuant BMCO subleased from Nuway the vehicles subject to the Nuway Lease. A true and correct copy of the Nuway-BMCO Sublease is attached hereto as "**Exhibit D-1**."

23. On or about January 30, 2015, GECC and BMCO entered into a Sublessee's Agreement (the "BMCO Sublessee Agreement"), pursuant to which BMCO acknowledges and agrees that its rights under the Nuway-BMCO Sublease are subordinate, junior, and subject to the rights and claims of GECC, its successors and assigns, against the property subject to the Nuway Lease. Further, upon default, pursuant to the BMCO Sublessee Agreement, BMCO agreed to pay directly to GECC all monies owing under the Nuway-BMCO Sublease, and proceeds of the Nuway-BMCO Sublease collected by GECC, or its successors and assigns, may

be applied to the amounts due and owing under the Nuway Lease. A true and correct copy of the BMCO Sublessee Agreement is attached hereto as "**Exhibit D-2**."

### *The Leases and the Lessees*

24. From time to time herein, the Noble Lease, the BMCO Lease, and the Nuway Lease, together with all amendments, modifications, and collateral documents relating thereto, are referred to collectively as the "Leases."

25. From time to time herein, Noble, BMCO and Nuway are referred to collectively as the "Lessees."

### *The Guaranties*

26. To induce GECC and its affiliates into entering the Noble Lease, Stacy unconditionally guaranteed the present and future performance of Noble under any of its obligations to, among others, GECC, GE TF Trust, and any of their respective successors and assigns. (the "Stacy-Noble Guaranty"). A True and correct copy of the Continuing Guaranty executed by Stacy dated April 19, 2013, evidencing the Stacy-Noble Guaranty is attached hereto as "**Exhibit E**."

27. To induce GECC and its affiliates into entering the Nuway Lease, Stacy unconditionally guaranteed the present and future performance of Nuway under any of its obligations to, among others, GECC, GE TF Trust, and any of their respective successors and assigns. (the "Stacy-Nuway Guaranty", and together with the Stacy-Noble Guaranty, the "Stacy Guaranties"). A true and correct copy of the Continuing Guaranty executed by Stacy dated January 30, 2015, evidencing the Stacy-Nuway Guaranty is attached hereto as "**Exhibit F**."

28. To induce GECC and its affiliates into entering the BMCO Lease, Stoneburner unconditionally guaranteed the present and future performance of BMCO under any of its

5

obligations to, among others, GECC, GE TF Trust, and any of their respective successors and assigns (the "Stoneburner Guaranty", and together with the Stacy Guaranties, the "Guaranties"). A true and correct copy of the Continuing Guaranty executed by Stoneburner dated November 26, 2014, evidencing the Stoneburner Guaranty, is attached hereto as "**Exhibit G**."

### *The Assignment*

29. Effective December 1, 2015, GECC and its affiliates, either directly or indirectly, transferred and assigned to Plaintiff all of its rights, titles, and interests in and to its accounts with Defendants, including, without limitation, the Leases, the Guaranties thereof, and all GECC's and its affiliates' rights associated with the Leases, including, but not limited to, GECC's and its affiliates' ownership interest in the vehicles identified therein. As such, Plaintiff is GECC's and its affiliates' successor-in-interest with respect to all rights, claims, and interests related to Defendants with respect to this action. A true and correct copy of the Transfer Acknowledgements evidencing the assignment from GECC and its affiliates to Plaintiff is attached hereto as "**Exhibit H**."

### **The Defaults**

### *Under the Leases*

30. Under the terms and conditions of the Leases, the failure to make a payment when due is considered an event of default.

31. The Lessees are in default under their respective Leases.

32. The Lessees failed to make payments under their respective Leases when those payments became due.

33. Moreover, on December 27, 2019 (the "Petition Date"), non-party G.D.S. Express, Inc. and certain of its affiliates including each of the Lessees, as debtors and debtors in

possession (collectively, the "Debtors"), filed petitions commencing Chapter 11 cases under the Bankruptcy Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court"), jointly administered under Case No. 19-53034 (collectively, the "Chapter 11 Cases").

34. The Lessees rejected the Leases pursuant to Section 365 of the Bankruptcy Code in the Chapter 11 Cases. A true and correct copy of the order of the Bankruptcy Court rejecting the Leases is attached hereto as "**Exhibit I**."

35. The filing of the Chapter 11 Cases constitutes a default under the Leases.

36. Rejection of the Leases constitute additional events of default under the terms of the Leases.

37. Plaintiff and its predecessors-by-assignment have performed all terms and conditions to be performed by them pursuant to the Leases and the BMCO Sublessee Agreement.

### *Under the Guaranties*

38. Under the terms and conditions of the Stacy Guaranties, Stacy is obligated to pay all amounts due and owing by Noble and Nuway to Plaintiff, without limitation.

39. Under the terms and conditions of the Stoneburner Guaranty, Stoneburner is obligated to pay all amounts due and owing by BMCO to Plaintiff, without limitation.

40. Under the terms and conditions of the Guaranties, the failure to make a payment when due is considered an event of default.

41. Defendants are in default under their respective Guaranties.

42. Stacy failed to make payments under the Noble Lease and the Nuway Lease when those payments became due.

43. Stoneburner failed to make payments under the BMCO Lease and the BMCO Sublessee Agreement when those payments became due.

44. Calculated as of February 15, 2022, the amount due and owing under the Noble Lease, not including attorneys' fees and expenses or cost of collection, is an amount not less than $15,006.73.

45. Calculated as of February 15, 2022, the amount due and owing under the BMCO Lease, not including attorneys' fees and expenses or cost of collection, is an amount not less than $155,012.16.

46. Calculated as of February 15, 2022, the amount due and owing under the Nuway Lease, not including attorneys' fees and expenses or cost of collection, is an amount not less than $257,037.20.

47. Stacy has failed or refused to pay the amounts due and owing under the Stacy Guaranties.

48. Stoneburner has failed or refused to pay the amounts due and owing under the Stoneburner Guaranty.

49. The Leases and Guaranties expressly provide that Plaintiff and Defendants unconditionally waive their respective rights to a jury trial of any claim or cause of action relating thereto.

50. The Leases and Guaranties expressly provide that Defendants shall pay all losses, costs, attorneys' fees and expenses incurred by Plaintiff in the enforcement of its rights under the respective Leases and Guaranties, including the cost of this litigation.

51. Plaintiff and its predecessors-by-assignment have performed any and all conditions and obligations required of them under the Guaranties.

## COUNT I
## Breach of Contract Stacy-Noble Guaranty

52. Plaintiff incorporates and realleges all preceding paragraphs in this Count I.

53. The Stacy-Noble Guaranty is a valid and fully enforceable contract between Plaintiff and Stacy.

54. Plaintiff and its predecessors-by-assignment have performed all terms and conditions to be performed by them pursuant to the Stacy-Noble Guaranty.

55. Stacy has not performed all the terms and conditions to be performed by him pursuant to the Stacy Noble Guaranty by, among other reasons, failing to make payments under the Noble Lease when those payments became due, and is therefore in breach of the Stacy-Noble Guaranty.

56. Plaintiff has suffered damages due to Stacy's breach.

57. Plaintiff is entitled to contractual money damages from Stacy.

WHEREFORE, Plaintiff prays that this Court enter a judgment in its favor and against Stacy in the amounts due under the Noble Lease pursuant to the Stacy Noble Guaranty, the exact amount to be proven at or before trial, together with such other and further relief as shall be just and equitable.

## COUNT II
## Breach of Contract Stacy-Nuway Guaranty

58. Plaintiff incorporates and realleges all preceding paragraphs in this Count II.

59. The Stacy-Nuway Guaranty is a valid and fully enforceable contract between Plaintiff and Stacy.

60. Plaintiff and its predecessors-by-assignment have performed all terms and conditions to be performed by them pursuant to the Stacy-Nuway Guaranty.

61. Stacy has not performed all the terms and conditions to be performed by him pursuant to the Stacy-Nuway Guaranty by, among other reasons, failing to make payments under the Nuway Lease when those payments became due, and is therefore in breach of the Stacy-Nuway Guaranty.

62. Plaintiff has suffered damages due to Stacy's breach.

63. Plaintiff is entitled to contractual money damages from Stacy.

WHEREFORE, Plaintiff prays that this Court enter a judgment in its favor and against Stacy in the amounts due under the Nuway Lease pursuant to the Stacy-Nuway Guaranty, the exact amount to be proven at or before trial, together with such other and further relief as shall be just and equitable.

## COUNT III
### Breach of Contract Stoneburner Guaranty

64. Plaintiff incorporates and realleges all preceding paragraphs in this Count III.

65. The Stoneburner Guaranty is a valid and fully enforceable contract between Plaintiff and Stoneburner.

66. Plaintiff and its predecessors-by-assignment have performed all terms and conditions to be performed by them pursuant to the Stoneburner Guaranty.

67. Stoneburner has not performed all the terms and conditions to be performed by him pursuant to the Stoneburner Guaranty by, among other reasons, failing to make payments under the BMCO Lease and the BMCO Sublessee Agreement when those payments became due, and is therefore in breach of the Stoneburner Guaranty.

68. Plaintiff has suffered damages due to Stoneburner's breach.

69. Plaintiff is entitled to contractual money damages from Stoneburner.

WHEREFORE, Plaintiff prays that this Court enter a judgment in its favor and against Stoneburner in the amounts due under the BMCO Lease and the BMCO Sublessee Agreement pursuant to the Stoneburner Guaranty, the exact amount to be proven at or before trial, together with such other and further relief as shall be just and equitable.

Dated: April 15, 2022.                                    Respectfully submitted,

                                                               */s/ Julie Miceli*
Julie Miceli
Ohio Bar No. 0078257
**HUSCH BLACKWELL LLP**
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606
(312) 655-1500
Julie.Miceli@huschblackwell.com

***Attorneys for BMO Harris Bank N.A.***