UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BMO HARRIS BANK, N.A., | ) | CASE NO. 5:22-cv-613 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| CRAIG STACY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is plaintiff BMO Harris Bank National Association's ("BMO") motion for default judgment against defendant Craig Stacy ("Stacy"), pursuant to Federal Rule of Civil Procedure 55(b). (Doc. No. 26 (Motion).) For the reasons that follow, default judgment is GRANTED in favor of BMO and against Stacy on the amended complaint. BMO is AWARDED $326,677.75 in damages, plus interest, and $25,032.65 in attorneys' fees and costs.

I. BACKGROUND

The claims in this case concern two lease agreements, both of which were guaranteed by Stacy. (Doc. No. 6 (Amended Complaint) ¶¶ 20–21.) Non-parties Noble's Inc. ("Noble") and Nuway Logistics Group, LLC ("Nuway," together with Noble, each a "Company," and, collectively, the "Companies") entered into separate lease agreements (the "Noble Lease" and "Nuway Lease," collectively, the "Leases") with General Electric Capital Corporation and its affiliate GE TF Trust (collectively, the "Lessors"). (*Id.* ¶¶ 10–12, 14–16.) The Leases allowed the Companies to lease commercial vehicles from the Lessors. (*Id.* ¶ 10.) Each Lease was supplemented by a Schedule A document, which detailed specific lease terms including the

vehicles leased, the length of the lease, the monthly payment due, and the purchase value of each vehicle. (*Id.* ¶¶ 11–12, 15–16; *see* Doc. No. 6-2 (Noble Schedule A); Doc. No. 6-4 (Nuway Schedule A).)

Relevant here, Stacy entered into two Continuing Guaranty contracts (the "Guaranties") in which he agreed to "pay on demand the entire Indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by" the Lessors in the event either Company defaulted on their lease obligations. (Doc. No. 6-5 (Noble Guaranty), at 2; Doc. No. 6-6 (Nuway Guaranty), at 2.)[1] After the lease relationships began, the Lessors transferred their rights in the Leases and the Guaranties to BMO. (Doc. No. 6-7 (Transfer of Rights), at 2–3.)

Eventually, each Company defaulted under their respective Lease by failing to make timely payments, filing for bankruptcy,[2] and rejecting the Leases during bankruptcy proceedings. (Doc. No. 6 ¶¶ 24–29.) In response to the Companies' defaults, BMO exercised its contractual right to cancel the Leases. (Doc. No. 26-2 (Declaration of Debb White) ¶ 25.)

Upon cancellation, BMO was entitled to certain damages and costs. (*Id.* ¶¶ 26–28 (citing applicable Lease provisions).) Specifically, each Company was required to pay any amount due as of the Lease cancellation date, all future amounts due under the Lease ("accelerated payments"), and the purchase value of each leased vehicle as defined in the applicable Schedule A document. (*Id.* ¶ 26.) Additionally, the Leases provide for 18% annual interest on the damages due and require

---

[1] All page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[2] Both Noble and Nuway are debtors in a pending bankruptcy proceeding. *See In re G.D.S. Express, Inc., et al.*, Case No. 19-53034 (Bankr. N.D. Ohio). BMO has certified that the 11 U.S.C. § 362 stay in that case has not been extended to include Stacy, who is not a debtor in the case. (Doc. No. 26-6.) *See Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196–97 (6th Cir. 1983) ("It is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor."); *Patton v. Bearden*, 8 F.3d 343, 348–49 (6th Cir. 1993) ("Some courts have held that the debtor's stay may be extended to non-bankrupt parties in 'unusual circumstances.'").

the Companies to pay the attorneys' fees and costs incurred by BMO in enforcing the Leases. (*Id.* ¶¶ 27–28.)

Here, BMO alleges that Stacy breached the Guaranties by refusing to pay the Companies' debts, and now seeks to recover the amounts owed by the Companies from Stacy. (Doc. No. 6 ¶¶ 41–52.) Specifically, BMO asserts it is owed $326,684.05 in damages, plus interest, and $27,298.15 in reasonable attorneys' fees and costs. (Doc. 26-2 ¶¶ 34–36.) Stacy was served with the amended complaint (*see* Doc. No. 12) but did not answer or otherwise respond. BMO—after several missed deadlines, repeated admonitions from the Court, and a one-year delay—filed a motion for default judgment against Stacy on October 8, 2024. (Doc. No. 26.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs default and default judgment. Under Rule 55, the plaintiff first must seek an entry of a defendant's default from the Clerk. *See* Fed. R. Civ. P. 55(a). Here, default has been entered against Stacy. (Doc. No. 24.) After the defendant's default is entered, the plaintiff can move for default judgment in one of two ways, depending on the type of relief sought. If the plaintiff seeks "a sum certain or a sum that can be made certain by computation . . . with an affidavit showing the amount due," the Clerk can enter default judgment under Rule 55(b)(1). Otherwise, the plaintiff must bring a motion for default judgment under Rule 55(b)(2) to be considered by a court.

BMO appears to seek default judgment under Rule 55(b)(1). (*See* Doc. No. 26, at 6–7.) Rule 55(b)(1), however, can be utilized "only if the plaintiff's entire complaint and all of the plaintiff's claims are for a sum certain or a sum that can be made certain by computation." *Van Zeeland Oil Co. v. Lawrence Agency, Inc.*, No. 2:09-cv-150, 2009 WL 10678619, at *2 (W.D. Mich. Sept. 28, 2009). Here, BMO seeks to recover reasonable attorneys' fees, which is not a sum

certain, and therefore cannot pursue default judgment under Rule 55(b)(1). *See id.* at *1 ("The need for the Court to determine what constitutes a 'reasonable' attorney fee in this case precludes the Clerk from entering a default judgment under Rule 55(b)(1)." (collecting cases)). Therefore, the Court construes BMO's motion as requesting default judgment under Rule 55(b)(2). *Id.* at *2.

Under Rule 55(b)(2), once default is entered by the Clerk, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006). The Court must still determine, however, whether the well-pleaded facts are sufficient to state a claim for relief. *Id.*; *J&J Sports Prods., Inc. v. Rodriguez*, No. 1:08-cv-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008).

Unlike factual allegations regarding liability, the Court does not accept alleged damages as true. *Ford Motor Co.*, 441 F. Supp. 2d at 848. Instead, "where the damages sought are not for a sum certain, the Court must determine the propriety and amount of the default judgment." *J & J Sports Productions, Inc.*, 2008 WL 5083149, at *1 (citing Fed. R. Civ. P. 55(b)); *Arthur v. Robert James & Assoc. Asset Mgmt., Inc.*, No. 3:11-cv-460, 2012 WL 1122892, at *1 (S.D. Ohio April 3, 2012) ("[W]hile liability may be shown by well-pleaded allegations, 'the district court must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" (citing *Osbeck v. Golfside Auto Sales, Inc.*, No. 07-14004, 2010 WL 2572713, at *5 (E.D. Mich. June 23, 2010))). Under Rule 55(b)(2), a court determining damages may hold an evidentiary hearing or rely on affidavits submitted by the plaintiff. *Arthur*, 2012 WL 1122892, at *1–2.

### III. DISCUSSION

Accepting the amended complaint's well-pleaded factual allegations as true, the Court finds that BMO has stated claims against Stacy for breach of the Guaranties. The Court also finds

that BMO has produced sufficient evidence to recover damages, interest, attorneys' fees, and costs from Stacy.

### A. Liability for Breach of the Guaranties

BMO alleges that Stacy breached the Guaranties by failing to pay the amounts owed by the Companies under the Leases. (Doc. No. 6 ¶¶ 44, 50.) Under Ohio law,[3] a guaranty is a contract and so, to succeed on its claims, BMO must establish the elements of a contract claim: 1) the existence of a contract; 2) performance by the Lessors and BMO; 3) a breach by Stacy; and 4) damage to BMO. *Fitz Simon, Inc. v. JHG, Inc.*, No. 107264, 2019 WL 1416981, at *3 (Ohio Ct. App. March 28, 2019) ("The breach of . . . the guaranty is governed by contract law."); *H.T. Hackney Co. v. NZR Retail of Toledo, Inc.*, No. 3:19-cv-353, 2021 WL 964096, at *3 (N.D. Ohio Mar. 15, 2021) (similar)).

The well-pleaded allegations in the amended complaint, deemed admitted by Stacy's default, establish the elements of BMO's claims. First, BMO alleges that it and Stacy entered into

---

[3] A federal court sitting in diversity jurisdiction generally applies the substantive law of the state in which it sits. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). But here, the Leases provide that they are to be governed by Texas law (*see* Doc. No. 6-1 ¶ 29; Doc. No. 6-3 ¶ 24), a choice that would likely be imputed to the Guaranties. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 194 (1971) ("The validity of a contract of suretyship and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the law governing the principal obligation which the contract of suretyship was intended to secure."). Ordinarily, then, the Court would employ Ohio's substantive choice-of-law rules to determine whether to enforce the Leases' apparent choice of Texas law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941). Two considerations, however, make such an analysis unnecessary. First, BMO has waived application of Texas law by failing to suggest, in either the pleadings or motion for default judgment, that Texas law should govern. *See, e.g.*, *Atlas Indus. Contractors, LLC v. In2Gro Techs.*, No. 2:19-cv-2705, 2021 WL 1139887, at *4–5 (S.D. Ohio Mar. 25, 2021) (parties waived application of choice of law provision in contract by failing to address it or explain the difference between the chosen law and the law of the forum). Second, under Ohio's choice of law rules, "if the two states would use the same rule of law or would otherwise reach the same result, it is unnecessary to make a choice of law determination because there is no conflict of law." *Mecanique C.N.C., Inc. v. Durr Env't, Inc.*, 304 F. Supp. 2d 971, 975 (S.D. Ohio 2004). Here, the Court would grant default judgment and award the same damages, interest, attorneys' fees, and costs regardless of whether Texas or Ohio law applied. *Compare, e.g.*, *H.T. Hackney Co. v. NZR Retail of Toledo, Inc.*, No. 3:19-cv-353, 2021 WL 964096, at *3, 5 (N.D. Ohio Mar. 15, 2021) (applying Ohio law), *with BMO Harris Bank N.A. v. RMZ Trucking LLC*, No. 3:17-cv-2316, 2018 WL 620192, at *1–3 (N.D. Tex. Jan. 30, 2018) (applying Texas law). Accordingly, the Court applies Ohio law.

the Guaranties, under which Stacy agreed to pay any debts incurred by the Companies under the Leases. (Doc. No. 6 ¶¶ 20–21.) Second, BMO alleges that it and the Lessors performed their obligations under the Guaranties. (*Id.* ¶¶ 43, 49.) Third, BMO alleges that Stacy breached the Guaranties "by, among other reasons, failing to make payments" that came due upon the Companies' defaults under the Leases. (*Id.* ¶¶ 44, 50.) And fourth, BMO alleges that it has suffered damages because of Stacy's breaches. (*Id.* ¶¶ 45, 51.)

### B.  Damages and Interest

As explained above, the Leases provided for certain damages and interest upon cancellation and, because of the Guaranties, BMO is entitled to recover those sums from Stacy. (Doc. No. 26-2 ¶¶ 17, 26–27.) In support of their damages calculations, BMO submits the declaration of Debb White, a BMO employee charged with maintaining BMO's business records related to the Leases. (*Id.* ¶ 6.)

#### 1.  *Damages and Interest Due under the Noble Lease and Guaranty*

The Court finds that BMO is owed $20,270.34 under the Noble Guaranty, plus additional accruing interest. (*See id.* ¶ 32.) The Court arrives at that figure as follows. Upon cancellation of the Noble Lease, BMO was initially owed $44,286.98, a sum comprised of past due lease payments and an amount equal to the purchase value of the leased vehicles. (*Id.* at 12, 14.) After contributions from a vehicle sale were credited against Noble's account, the debt was reduced to $12,781.90. (*Id.* at 14; *see also id.* ¶ 29.) Additionally, Debb White computed that as of December 26, 2023, $7,488.44 in interest had accrued on the damages due. (*Id.* at 14.) Therefore, BMO has demonstrated that Stacy owes $20,270.34 under the Noble Guaranty as of December 26, 2023,

plus additional interest accruing at rate of $6.30 per diem[4] from December 27, 2023, until the Noble Lease debt is paid in full. (*Id.* ¶ 32.)

### 2. *Damages and Interest Due under the Nuway Lease and Guaranty*

The Court also finds that BMO is owed $306,407.41 under the Nuway Guaranty, plus additional accruing interest. (*Id.* ¶ 33.) The calculations here are much the same as above. Upon cancellation of the Nuway Lease, BMO was initially owed $240,035.34, a sum comprised of past due lease payments, accelerated future lease payments,[5] and an amount equal to the purchase value of the leased vehicles. (*Id.* at 15–17.) After contributions from a vehicle sale were credited to Nuway's account, the debt was reduced to $193,151.71. (*Id.* at 17; *see also id.* ¶ 29.) Additionally, Debb White computed that as of December 27, 2023, $113,255.70 in interest had accrued on the damages due. (*Id.* at 17.) Therefore, BMO has demonstrated that Stacy owes $306,407.41 under the Nuway Guaranty as of December 27, 2023, plus additional interest accruing at rate of $95.25 per diem[6] from December 28, 2023, until the Nuway Lease debt is paid in full. (*Id.* ¶ 33.)

### C. Attorneys' Fees and Costs

BMO also seeks to recover $25,134.00 in attorneys' fees and $2,164.15 in related litigation costs. (Doc. No. 6 ¶ 39; Doc. No 26-4 (Declaration of Aaron Chapin), at 14–15.) The Leases provide that BMO can recover any attorneys' fees and costs incurred in the enforcement of its

---

[4] The per diem interest rate is derived from the Noble Lease's stated annual interest rate of 18% on the damages due (here, $12,781.90). (Doc. No. 26-2 ¶ 27.) Therefore, the per diem calculation is as follows: ($12,781.90 x 0.18) / 365 = $6.30. Additional interest is owed from December 27, 2023, which is the first day not included in White's damages calculation. (*Id.* at 12.)

[5] Unlike the Noble Guaranty, accelerated payments are included in the Nuway Guaranty damages calculation because there were 24 months remaining on the Nuway Lease at the time of cancellation. (Doc. No. 26-2 ¶ 26.)

[6] As with the Noble Lease, the Nuway Lease provides for an 18% annual interest rate on the damages due (here, $193,151.71). (Doc. No. 26-2 ¶ 27.) Therefore, the per diem calculation is as follows: ($193,151.71 x 0.18) / 365 = $95.25 per diem. Additional interest is owed from December 28, 2023, which is the first day not included in White's damages calculation. (*Id.* at 15.)

contractual rights. (Doc. No 26-2 ¶ 35.) To support its request for fees and costs, BMO submits the declaration of attorney Aaron B. Chapin. (Doc. No. 26-4.) Chapin's declaration identifies the attorneys who worked on this matter, as well as their experience and hourly rates. (*Id.* ¶ 13.) The Chapin declaration also provides itemized billing entries and costs associated with the work conducted on this matter from January 11, 2022, through August 22, 2024. (*Id.* at 9–15.)

"Under Ohio law, '[a]ttorney's fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees.'" *H.T. Hackney Co. v. NZR Retail of Toledo, Inc.*, No. 3:19-cv-353, 2021 WL 4502731, at *1 (N.D. Ohio Oct. 1, 2021) (quoting *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 400 (Ohio 2009) (further citation omitted)). A contractual provision providing for attorneys' fees is enforceable "'so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case.'" *Id.* (quoting *Wilborn*, 906 N.E.2d at 400). Ohio courts, like federal courts, employ the lodestar approach to evaluate whether an award of attorneys' fees is reasonable. *Phoenix Lighting Grp., LLC v. Genlyte Thomas Grp., LLC*, 153 N.E.3d 30, 35–36 (Ohio 2020) (citing *Hensley v. Eckhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)); *Calypso Asset Mgmt., LLC v. 180 Indus., LLC*, 127 N.E.3d 507, 516–17 (Ohio Ct. App. 2018).

The lodestar calculation is based on the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. After calculating the lodestar amount, the Court may modify the award after considering certain additional factors. *Phoenix Lighting Grp.*, 153 N.E.3d at 35–36. "To justify any award of attorneys' fees, the party seeking compensation bears the burden of documenting its work." *Gonter v. Hunt Valve Co., Inc.*,

510 F.3d 610, 617 (6th Cir. 2007); *see also Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.").

Here, the Court finds that the attorneys' hourly rates were reasonable but takes issue with a portion of the hours expended on this matter.

      *1.     Reasonable Hourly Rates*

Reasonable attorneys' fees are to be calculated based on "the prevailing market rate in the relevant community, given the complexity of the issues and the experiences of the attorney." *Phoenix Lighting Grp.*, 153 N.E.3d at 35 (internal citations omitted); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) ("[T]he 'prevailing market rate' is the rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record[.]"). The prevailing market rate can be demonstrated a number of ways, including affidavits of other attorneys, fee award studies, citations to prior precedent regarding reasonable rate adjudications, or the Court's own experience in recognizing reasonable applicable prevailing rates. *See Disabled Patriots of Am. v. Genesis Dreamplex, LLC*, 3:05-cv-7153, 2006 WL 2404140, at *3 (N.D. Ohio Aug. 18, 2006). In the end, "[a] district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994).

Here, BMO's counsel billed BMO at hourly rates of $195, $375, and $445. (Doc. No. 26-4 ¶ 13.) Neither BMO nor its counsel submitted any evidence establishing that those rates are consistent with the prevailing market rate for attorneys of similar experience in the Northeast Ohio area dealing with this type of case. In the absence of such evidence, the Court finds the Ohio State Bar Association's Report ("OSBA Report"), *The Economics of Law Practice in Ohio in 2019, A Desktop Reference*, to be persuasive. Because several years have passed since the publication of

the OSBA Report, the Court looks to the 75th percentile hourly rate to account for rate increases in the interim. The OSBA Report reflects that, at the 75th percentile, attorneys at large Ohio firms of more than 50 attorneys charge an hourly rate of $475. In light of the OSBA Report, and the Court's own experience, the Court finds the requested hourly billing rates to be reasonable.

### 2. *Hours Reasonably Expended*

In addition to hourly rates, the actual number of hours spent on the case must also be reasonable. *State ex rel. Harris v. Rubino*, 126 N.E.3d 1068, 1070–71 (Ohio 2018). The Court may "exclude 'hours that are excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Hensley*, 461 U.S. at 434).

The Court largely finds the hours expended in this case to be reasonable, with one category of exceptions. Throughout this litigation, the Court had to repeatedly admonish BMO's counsel for failure to adhere to deadlines, resulting in four show-cause orders. (*See* Doc. Nos. 5, 10, 13, 21.) Now, BMO's counsel seeks reimbursement for hours expended responding to some of those orders. (Doc. No. 26-4, at 10–12.) The Court will not charge Stacy for those fees. Had BMO's counsel adhered to deadlines, those expenditures would have been unnecessary. As such, those hours were not "reasonably necessary to litigate the case." *Calypso Asset Mgmt., LLC v. 180 Indus., LLC*, 171 N.E.3d 790, 800 (Ohio Ct. App. 2021) (striking hours expended by counsel in pursuit of sanctions that were "wholly independent" of defending the case); *see also BMO Harris Bank N.A. v. Gorban Transp. Inc.*, No. 4:20-cv-758, 2021 WL 5279571, at *3 (E.D. Mo. Nov. 12, 2021) (declining to "charge the Defendants for time BMO Harris's attorneys spent attempting—and failing—to correct their own errors"); *Yulfo-Reyes v. Berryhill*, No. 3:17-cv-2015, 2019 WL 582481, at *4 (D. Conn. Feb. 13, 2019) (striking hours expended by counsel responding to court's

show cause order (citing *Weeks v. Colvin*, No. 3:13-cv-232, 2015 WL 3453358, at *2 n.2 (D. Conn. May 28, 2015) (same)).

Accordingly, the Court strikes the following billing entries:

| Name | Work Date | Hours Worked | Billed Amount | Narrative |
|---|---|---|---|---|
| Golding, Johnathan | 8/24/22 | 1.9 | $636.50 | Draft response to court's order to show cause |
| Chapin, Aaron | 8/24/22 | 0.5 | $202.50 | Edit response to rule to show cause and edit amended complaint |
| Chapin, Aaron | 8/25/22 | 0.4 | $162.00 | Edit response to rule to show cause |
| Golding, Jonathan | 8/25/22 | 0.3 | $100.50 | Draft response to court's order to show cause |
| Mayette, Anne | 12/1/22 | 0.2 | $81.00 | Review and analyze court order regarding order to show cause for failure to serve defendants |
| Arundel, Elizabeth | 12/7/22 | 0.7 | $122.50 | Create redacted Show Cause exhibits |
| Chapin, Aaron | 12/7/22 | 0.4 | $162.00 | Edit response to rule to show cause |
| Golding, Jonathan | 12/7/22 | 1.9 | $636.50 | Draft response to rule to show cause |
| Chapin, Aaron | 1/30/23 | 0.4 | $162.00 | Edit notice of default and status report to court |
| **TOTAL** | | **6.7** | **$2,265.50** | |

Deducting those hours and associated fees, the Court awards $22,868.50 in attorneys' fees. Additionally, BMO seeks to recover costs totaling $2,164.15, consisting of filing fees and process server costs. (Doc. No. 26-4, at 15.) The Court finds these costs to be reasonable and supported by the record. Accordingly, the Court awards a total of $25,032.65 in attorneys' fees and costs.

## IV. CONCLUSION

For the reasons set forth above, BMO's motion for default judgment on the amended complaint against Stacy is GRANTED. BMO is AWARDED $326,677.75[7] in damages, plus

---

[7] The award appears to differ by $6.30 from the total damages requested by BMO. (Doc. No. 26-2 ¶ 34.) That difference, however, is explained by White's addition of one day of interest under the Noble Guaranty for December

11

interest. Specifically, the damages portion of the award consists of $20,270.34 under the Noble Guaranty, with additional interest accruing at rate of $6.30 per diem from December 27, 2023, and $306,407.41 under the Nuway Guaranty, with additional interest accruing at rate of $95.25 per diem from December 28, 2023. The Court also awards $25,032.65 in attorneys' fees and costs. This case is closed.

**IT IS SO ORDERED**.

Dated: October 28, 2024

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

27, 2023. (*Id.* ¶ 34 n.2.) Elsewhere, her calculations rely on December 26, 2023, as the damages calculation date for the Noble Guaranty (*id.* ¶ 32; *id.* at 12–14), so that is the date the Court utilizes in this order. Ultimately, the amount awarded to BMO is consistent with the requested damages because the Court's award provides for one additional day of interest under the Noble Guaranty.